# National Surety Corporation v. First Nat. Bank of Prestonsburg et al.

May 9, 1939.

274

KIRK & WELLS and A. R. KINGDON for appellant.
JOE HOBSON and A. B. COMBS for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The National Surety Corporation brought this action against the First National Bank of Prestonsburg, Kentucky, and George W. Snodgrass to recover the sum of $708. A demurrer to the petition as amended was sustained, and, the plaintiff having declined to plead further, a judgment was entered dismissing its petition as amended. From that judgment the plaintiff has appealed.

In its petition the plaintiff alleged, in substance, that it became bound with Leland Smith to the United Mine Workers of America, Local Union No. 6281, of McRoberts, Kentucky, for the faithful performance by Smith of his duties as financial secretary of the union; that Smith had defaulted in the performance of his duties by wrongfully appropriating to his own use the proceeds of a check for $708, payable to the United Mine Workers of America, Local Union No. 6281; that said check was drawn by the Consolidation Coal Company, payable to the United Mine Workers of America, Local Union No. 6281, and was indorsed and negotiated without the knowledge and consent of the payee; that the plaintiff, in the discharge of the obligation on its bond, had paid the sum of $708 to the United Mine Workers of America, Local Union No. 6281, and thereby was subrogated to the rights of the obligee in the bond. It was further alleged in the petition that Leland Smith had authority only to indorse and deliver the check to the treasurer of the payee for deposit in the Bank of Whitesburg; that in the company of the defendant George W. Snodgrass, without authority or right to do so he indorsed and negotiated the check to the defendant the First National Bank of Prestonsburg, and the bank credited the proceeds of the check to the general deposit account of the defendant, George W. Snodgrass; that both of the defendants had full notice that the check was the property of the United Mine Workers of America, Local Union No. 6281; and that they had notice of and participated in Smith's misappropriation of the check to his own personal use. In an amended petition the plaintiff alleged that subsequent to the negotiation of the check it gave further notification to the defendant First National Bank of Prestonsburg that the transaction was not authorized and constituted a breach of trust by all parties concerned with the negotiation of the check, and demanded that the defendant charge against the account of George W. Snodgrass the amount represented by the check which had been negotiated without authority; that in response to this notification the First National Bank of Prestonsburg withdrew from the account of the defendant George W. Snodgrass and impounded the sum of $708, and thereafter, upon receipt of a duly executed and satisfactory bond from the defendant George W. Snodgrass, such bond being conditioned to indemnify the defendant First National Bank of Prestonsburg against loss or damage which it might suf-

fer by reason of its release of the impounded funds in its hands, released the amount so impounded to the defendant, George W. Snodgrass.

The appellees insist that the circuit court properly sustained the demurrer to the petition as amended, since neither the petition nor amended petition stated a cause of action against either of the appellees, and the allega-tions of the petition are not sufficient to entitle appellant to subrogation. The petition and amended petition are not drawn with the care and precision usually associated with good pleading, but the allegations are sufficient to constitute a cause of action against both of the defend-ants. Facts and not conclusions, as claimed by appel-lees, are alleged, which, if true, show that Leland Smith, in the presence of the defendant George W. Snodgrass, wrongfully negotiated a check payable to the United Mine Workers of America, Local Union No. 6281, and that the proceeds of the check were credited to the ac-count of Snodgrass by the First National Bank of Pres-tonsburg, Kentucky, and that both of the defendants had notice of the unauthorized negotiation of the check by Leland Smith, and participated in the wrongful appro-priation of the proceeds to his own personal use. The allegations of notice to the defendants and knowledge on their part of the unauthorized negotiation of the check were allegations of fact and not mere conclusions. In Stratton v. Stratton's Adm'r, 149 Ky. 473, 149 S. W. 900, 901, an action was brought to recover money, part of a trust fund, paid by the trustee for the benefit of the defendants. It was alleged that the defendants had notice of the terms of the trust and participated in the misappropriation of the funds by the trustee. It was argued that the demurrer to the petition should have been sustained, but this court held the petition stated a cause of action. It said:

"The first error assigned is that the general demur-rer interposed to the petition of the administrator should have been sustained, upon the ground that the petition did not state a cause of action. We are unable to agree with counsel in this view of the mat-ter. The petition set out that after Lon Stratton, as trustee for Mirtie Stratton, had collected the in-surance money, he wrongfully and fraudulently paid to J. W. Stratton and Clarence Stratton the amounts claimed. It was further averred that each of them had notice of the existence and terms of

the trust, and, knowing that the fund was a trust fund, participated in the fraudulent misappropriation of it by the trustee. We think the petition stated a good cause of action, and that the court correctly overruled the demurrer to it.''

It is also argued by appellees that the petition is insufficient in that it fails to give the covenants of the bond, or to allege that any obligee was designated therein. Cases are cited in which it was held that the stipulations of the bond upon which a recovery is sought must be alleged in order that liability of the obligors may be determined, but these were cases in which the action was on the bond and the obligee on the bond was seeking to recover from the obligor. Here the action is not on the bond, but is one by the surety against strangers to the bond and the same particularity as to the covenants of the bond is not required in the averments of the petition. It was alleged that the plaintiff was surety upon the bond of Leland Smith for the faithful performance of his duties as financial secretary of the United Mine Workers of America, Local Union No. 6281; that he had defaulted in the performance of his duties, and the plaintiff, in discharge of the obligation of its bond, had paid the sum of $708 to the obligee in the bond. These allegations were sufficient.

It is finally insisted by the appellees that there is no right of subrogation in this case, and, as the obligee in the bond has received payment of the amount it claims to have lost by reason of the defalcation of its agent, that is the end of the matter and therefore the demurrer to the petition as amended was properly sustained. They rely upon American Bonding Company of Baltimore v. First National Bank, 85 S. W. 190, 27 Ky. Law Rep. 393, and Louisville Trust Company v. Royal Indemnity Company, 230 Ky. 482, 20 S. W. (2d) 71. It is a well-recognized principle of equity that the payment of an obligation by one who is a mere surety entitles him to subrogation to all the rights, remedies, and equities of the obligee for his own indemnity, though there be no agreement to that effect. Smith v. Latimer, 15 B. Mon. 75; Hill v. Fleming, 128 Ky. 201, 107 S. W. 764, 32 Ky. Law Rep. 1065, 16 Ann. Cas. 840; Barker v. Illinois Surety Company, 169 Ky. 441, 184 S. W. 377; Moore v. Pope, 260 Ky. 619, 86 S. W. (2d) 540. In Vance v. Atherton, 252 Ky. 591, 67 S. W. (2d) 968, 970, it was said:

"The doctrine of subrogation is pure equity, having foundation in principles of natural justice. It rests, not on contract, but on the natural principles of right and justice, when applied to the facts of the particular case, and includes every instance in which one who is not a volunteer pays the debt of another. Probst v. Wigginton, 213 Ky. 610, 281 S. W. 834; Louisville Trust Company v. Royal Indemnity Company, 230 Ky. 482, 20 S. W. (2d) 71. It is applied only when necessary to bring about equitable adjustment of a claim founded on right and natural justice."

In Maryland Casualty Company v. Walker, 257 Ky. 397, 78 S. W. (2d) 34, it was held that subrogation must be enforced with due regard to the rights of others, and cannot be invoked to work injustice or to defeat the legal right or superior equity or displace intervening rights of others. In American Bonding Company v. First National Bank, supra, relied upon by appellees, it was held that a surety who, for a premium, guarantees the honesty of a servant to his master and who is compelled to pay the latter's losses sustained by reason of forged or raised checks made by the employee and drawn from the employer's bank account is not entitled to subrogation to the claim which the master had against the bank for the recovery of the money it paid upon the checks and charged to the employer's account. The decision was rested altogether upon the authority of Stewart v. Commonwealth, 104 Ky. 489, 47 S. W. 332, 20 Ky. Law Rep. 686, where subrogation was denied to the sureties upon the official bond of the county clerk who had issued and indorsed to an innocent purchaser false witness-fee certificates. Subrogation was not denied to the sureties because they were paid sureties, but because the purchaser of the fraudulent certificates could have compelled the sureties to make good any loss he incurred by the default of the officer whose fidelity they had guaranteed. Of course, under these circumstances, the sureties could not in turn proceed against the purchaser. In Louisville Trust Company v. Royal Indemnity Company, supra, also relied upon by appellees, the fidelity of W. G. Sluder, as manager of the Louisville branch of the Credit Clearing House Adjustment Corporation, was insured by the Royal Indemnity Company. He was instructed to deposit checks in the name of his employer in a bank in Louisville, but he soon began depositing to

his own credit in another bank checks payable to his employer and its clients. The money thus deposited he withdrew on his personal checks and used for his own purposes. The Royal Indemnity Company paid to the Credit Clearing House Adjustment Corporation the amount of Sluder's defalcation, and brought an action against the bank in which he had deposited the checks to his own credit to recover the amount it had been required to pay. In the course of the opinion it was said that the rule that made the bank liable to the Credit Clearing House Adjustment Corporation was, to say the least, a harsh one under the facts of the case, and that in view of its extreme harshness the court was not inclined to go further and hold that the equities of a surety that has been made to bear the loss are superior to those of the bank that receives no benefit from the transaction. It was not said in the American Bonding Company and Louisville Trust Company cases that, under no circumstances, could a paid surety be subrogated to the rights of the obligee in the bond. On the contrary, the decisions were put upon the facts of those cases, and it was held, in effect, that subrogation was not necessary, under the circumstances, to bring about an equitable adjustment between the parties. At most, these cases held that mere want of due care on the part of the bank in discovering the misappropriation of funds by a bonded depositor did not, under the particular facts, afford equitable grounds for subrogation as against the bank by the corporate surety of the depositor. As was said in Movl Construction Company v. Covington Trust & Banking Company, 258 Ky. 485, 80 S. W. (2d) 560, 562, the doctrine of subrogation "is a pure unmixed equity, having its foundation in principles of natural justice. In enforcing the right of subrogation, the purpose always is to make application of equitable principles to particular facts, and to effectuate the administration of natural justice between all parties concerned."

The right of subrogation will not be denied merely because the surety is a compensated corporate surety, although this fact may be considered in balancing the equities. United States Fidelity & Guaranty Company v. Mayo Arcade Corporation, 253 Ky. 763, 70 S. W. (2d) 531; American Surety Company of New York v. Noe, 245 Ky. 42, 53 S. W. (2d) 178; United States Fidelity & Guaranty Company v. McGinnis' Adm'r, 147 Ky. 781, 145 S. W. 1112; Lewis' Adm'r v. United States Fidelity

& Guaranty Company, 144 Ky. 425, 138 S. W. 305, Ann. Cas. 1913A, 564; Farmers' & Traders Bank v. Fidelity & Deposit Company of Maryland, 108 Ky. 384, 56 S. W. 671, 22 Ky. Law Rep. 22.

The facts alleged in appellant's petition are wholly different from the facts in the two cases relied upon by appellees. The petition as amended charges, in substance, that the appellees had notice that the check negotiated by Leland Smith belonged to Local Union No. 6281, the obligee in the bond, and with this knowledge aided and assisted him in perpetrating a fraud in negotiating the check. Under these facts, if true, subrogation of appellant to the rights of the obligee in the bond is necessary "to bring about an equitable adjustment between parties." Maryland Casualty Company v. Walker, supra [257 Ky. 397, 78 S. W. (2d) 36].

The judgment is reversed, with directions to overrule the demurrer to the petition, as amended.